IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| WILLIAM M. WATTS,<br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    Respondent. | Case No. 1:16-cv-01382-JES |

**AMENDED ORDER**

    Before the Court are the Petitioner, William Watts', *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 (D. 1),[1] his Memorandum of Law in Support (D. 2), the Respondent, the United States of America's, Response (D. 13), and the Petitioner's Reply (D. 17). The Court held an evidentiary hearing on March 21, 2018, where the Petitioner was represented by appointed counsel. (See the Court's March 21, 2018 Text Order); (D. 20). For the reasons set forth below, the Petitioner's § 2255 Motion is DENIED and the Court declines to issue a certificate of appealability. This matter is now terminated.

    In the face of overwhelming evidence against him for conspiracy charges involving at least 280 grams of crack cocaine under 21 U.S.C. §§ 846, 841(a)(1), the Petitioner plead guilty, pursuant to a Rule 11(c)(1)(A) and (B) written plea agreement. (Cr. D. 144).[2] At sentencing, he received 20 years' imprisonment. (D. Cr. 174). Prior to accepting a plea, he had multiple attorneys represent him. (Cr. D. 71); (Cr. D. 85); (Cr. D. 101). Ultimately, Chandra Justice was appointed as his counsel during the events at issue here. (See the Court's January 9, 2014 Minute Entry). As the Court discussed before concluding the March 21, 2018 evidentiary hearing, the Petitioner had

---

[1] Citations to the Docket in this case are abbreviated as "D. __."
[2] Citations to the Docket from Petitioner's criminal case (12-cr-10115) are abbreviated as "Cr. D. __."

regular interactions with the Court prior to entering his guilty plea and demonstrated that he would never hesitate to share directly with the Court what was on his mind. See *e.g.* (Cr. D. 108); (Cr. D. 206).

Part of the overwhelming evidence against the Petitioner—beyond law enforcement's controlled buys, testimony from multiple co-defendants, and video and audio surveillance of his criminal activities—was his own statements to the Government after his arrest. Before entering his guilty plea, he made self-incriminating statements in two proffer interviews. The Government could use those statements against him as a result of his inconsistent testimony in a third proffer interview. (Cr. D. 126). Without a plea, the Petitioner risked receiving a mandatory life sentence if convicted at trial. Under the terms of his plea, however, the parties agreed that the Petitioner could seek a sentence below the advisory guideline range, so long as the sentence he sought was not less than the mandatory minimum—20 years' imprisonment. (Cr. D. 144 at pg. 9). The Government agreed to recommend a sentence no higher than the low end of the advisory guideline range and use only one of the Petitioner's prior felony drug convictions, rather than both, to enhance his sentence. *Id*. at pg. 10. A presentence report was ordered. The sentencing guideline calculation was 262-327 months with the mandatory minimum being twenty years, instead of life, due to only one prior felony drug conviction being factored in. (Cr. D. 166 at pg. 23). The guilty plea also included a waiver of his right to appeal or collaterally attack his conviction, unless he challenged the conditions directly related to his waiver. *Id*. at pp. 4-5; 16.

At sentencing, the Petitioner orally informed the Court that he wanted to withdraw his guilty plea. For the first time, he alleged that he was misled into believing that two of his co-conspirators, Marcus Sullivan and Matthew Sullivan, had agreed to cooperate with the Government. (Cr. D. 206 at pg. 10). Given that the Petitioner never moved to withdraw his guilty

plea, this Court proceeded with the hearing and imposed a 20-year sentence, the mandatory minimum. (Cr. D. 174). In the process, this Court noted that the Petitioner made deliberate decisions in the wake of his arrest and consistently "directed" proceedings intentionally. (Cr. D. 206 at pp. 33-34).

Despite his waiver, the Petitioner appealed his conviction. *United States v. Watts*, Case No. 14-2564, January 23, 2015. His appointed counsel could not find any non-frivolous argument and filed a motion to withdraw, pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967). The Petitioner opposed the motion, arguing, *inter alia*, that his attorney misled him by falsely stating that the Sullivans were cooperating with the Government. In disposing of his appeal in short order, the Seventh Circuit stated, in relevant part, that:

> …it matters not whether the coconspirators who Watts believed to be cooperating with the government really intended to testify against him; a defendant has no right to know the identity of the government's witnesses before trial, and neither will a defendant's ignorance about the strength of the government's evidence prevent him from entering a voluntary guilty plea that's supported by an adequate factual basis.

Case No. 14-2564 at pg. 2 (citations omitted).

In October 2016, the Petitioner moved pursuant to 28 U.S.C. § 2255 to have his sentence vacated, set aside, or corrected. (D. 1). Given his collateral attack waiver, the first claim that must be addressed by the Court is whether his counsel was ineffective in negotiating his plea agreement. *Hurlow v. United States*, 726 F. 3d 958, 967 (7th Cir. 2013). If he cannot succeed on this argument, he has waived his remaining claims. See *Solano v. United States*, 812 F. 3d 573, 577 (7th Cir. 2016) ("The appeal waiver stands or falls with the plea agreement.") (citing *United States v. Behrman*, 235 F. 3d 1049, 1051 (7th Cir. 2000)). In order to establish that his trial counsel was ineffective, the Petitioner must demonstrate that (1) trial counsel performed deficiently and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

3

The Petitioner alleges his trial counsel was deficient in telling him that the Sullivans were cooperating with the Government when they were not. (D. 1). But for this error, he claims, he would not have accepted the Government's guilty plea. *Id.* The only evidence of this allegation is the Petitioner's self-serving statements. Standing in stark contrast to his claim is trial counsel's statements to the contrary (D. 13-1 at pp. 15-19) and the vast majority of the record before the Court.

Simply put, trial counsel's version of the events at issue is more credible than the Petitioner's. The record demonstrates that neither of the Sullivans were listed as cooperating witnesses by the Government and that Matthew Sullivan plead guilty after the Petitioner. (Cr. D. 143). It is unlikely that trial counsel would have fabricated any facts in order to induce the Petitioner to plead guilty. Pleading guilty was objectively reasonable under the circumstances. There is also nothing suggesting that trial counsel had a personal incentive or inclination to evade a trial. On the contrary, at the guilty plea hearing she stated in open court that she was willing to proceed to trial if the Petitioner so desired. (Cr. D. 205 at pg. 5). Given the record before the Court, the Petitioner's mere accusation that he was coerced into entering his guilty plea is incredible.

Moreover, even if the Court were to presume that trial counsel's performance was deficient, the Petitioner's claim still fails. In order to succeed, he must further prove that but for counsel's error, he would not have plead guilty and instead would have proceeded to trial. *Long v. United States*, 847 F. 3d 916, 922-23 (7th Cir. 2017). The Petitioner's allegations are insufficient; he "must go further and present objective evidence that a reasonable probability exists that he would have taken that step." *Id*; *United States v. Cieslowski*, 410 F. 3d 353, 359 (7th Cir. 2005) (quoting *Berkey v. United States*, 318 F. 3d 768, 772 (7th Cir. 2003)).

Nothing in the record suggests that the Petitioner would have proceeded to trial, at the risk of receiving a mandatory life sentence, with overwhelming evidence implicating him. He affirmed in open court that the Government could prove his guilt. (Cr. D. 205 at pp. 19-23). The strength of the Government's case was also buttressed by the self-incriminating statements the Petitioner made during his first two proffer interviews. He has put forth no evidence that he would have risked a life sentence at trial in lieu of the plea agreement. Under the plea, he was given the opportunity to receive a much lower sentence (*i.e.* 262-327 months) or a mandatory minimum of 20 years imprisonment. He received the latter. The Petition (D. 1) is without merit and is DENIED.

The Court further notes that Rule 11(a) of the Rules Governing § 2255 Proceedings directs district courts to either issue or deny a certificate of appealability when entering a final order adverse to the applicant. To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Given the facts of this case, no reasonable jurist could conclude that the Petition before this Court entitles the Petitioner to relief under § 2255. Accordingly, this Court will not issue a certificate of appealability.

*It is so ordered.*

Entered on March 26, 2018

s/ James E. Shadid
James E. Shadid
Chief United States District Judge